IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TIMOTHY A. TABOR and DEBRA J. TABOR,<br><br>      Plaintiffs,<br><br>vs.<br><br>THE METAL WARE CORPORATION, et al.,<br><br>      Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:99CV503 |

  This matter is before the court on two motions for summary judgment by Defendants The Metal Ware Corporation ("Metal Ware") and Newco of Two Rivers, Inc. ("Newco") and one motion for partial summary judgment by Plaintiffs Timothy and Debra Tabor ("the Tabors"), joined by Plaintiff Farmers Insurance Group ("Farmers").  This is a products liability case arising from a malfunctioning food dehydrator that caused a fire at the Tabors' home.  The only cause of action remaining is based upon a failure to warn theory.

  Defendants Metal Ware and Newco have moved for summary judgment on the issues of causation and punitive damages.  Plaintiffs have also moved for partial summary judgment on the issue of liability.  For the reasons set forth below, the court finds that the Tabors have not provided sufficient facts to demonstrate that Metal Ware and Newco's failure to warn was the proximate cause of the Tabors' fire.

**BACKGROUND**

The Tabors seek damages stemming from a fire that destroyed their home on November 19, 1998. They allege that their food dehydrator, an FD-50, that they purchased from Defendant UVAL Shopko Stores, Inc. ("Shopko"), caused the fire. Although there has been some dispute on this point, the Tabors admitted in depositions, and the court found, that they bought the dehydrator in the spring of 1996. Unknown to the Tabors, the food dehydrator had been the subject of a manufacturer's recall in August 1995, due to a heating element that presented a fire hazard.

The Tabors allege that American Harvest Corp. ("American Harvest"), manufactured their food dehydrator. Newco, a subsidiary of Metal Ware, purchased the assets of American Harvest on April 2, 1997. Newco and Metal Ware have continued to manufacture dehydrators under the American Harvest trade name. The manufacturer's recall in 1995 was coordinated by the United States Consumer Product Safety Commission (CPSC). The CPSC, pursuant to the recall, required American Harvest to keep it apprised of all adverse events associated with the FD-50 food dehydrator.

Metal Ware and Newco filed a motion for summary judgment on January 15, 2003, which the court granted in part and denied in part on September 8, 2003. The court granted Metal Ware's and Newco's motion on Plaintiffs' claims of liability under a distribution theory and as to any exceptions to the general rule of non-liability of a successor company. The court, however, denied the motion on Plaintiffs' claim for liability under a duty to warn theory. On June 24, 2004, Metal Ware and Newco filed a renewed motion for summary judgment on the duty to warn issue. Specifically, Metal Ware and Newco asserted that they had no duty to warn and could not be held liable on a failure to warn theory. On July 8, 2004, after hearing argument

from counsel, the court denied Metal Ware and Newco's motion for summary judgment. All Defendants other than Metal Ware and Newco have been dismissed from the action.

There are currently three motions pending before the court. Central to the disposition of these motions is the question of whether the Tabors have produced facts sufficient to demonstrate that Metal Ware and Newco's failure to warn was the cause of their injury. Plaintiffs have argued that Metal Ware had a duty to warn of the possibility that the FD-50 food dehydrator could start a fire and that this duty ran to the CPSC, ShopKo or directly to the Tabors.

Without examining whether a cause of action for failure to warn runs to a successor corporation and can arise as a post-sale duty under Utah law, the court recognizes that a necessary element to this cause of action would be a demonstration by the Plaintiffs that Metal Ware's failure to warn was the proximate cause of the Tabors' fire.

## ANALYSIS

Under Federal Rule of Civil Procedure 56, a court may enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). The party moving for summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. Celotex, 477 U.S. at 323; Adler, 144 F.3d at 670–71. A movant "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." Adler, 144 F.3d at 671. In applying this standard, the court views the factual record and must construe all facts and reasonable inferences therefrom in the light most

favorable to the nonmovant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Aramburu v. Boeing Co., 112 F.3d 1398, 1402 (10th Cir. 1997).

Once the moving party has carried its initial burden, Rule 56(e) requires the nonmovant to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Adler, 144 F.3d at 671 (quoting Fed. R. Civ. P. 56(e)).  The specific and pertinent facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."  Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992).  Mere allegations and references to the pleadings will not suffice.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."  Bones v. Honeywell Intern., Inc., 366 F.3d 869, 875 (10th Cir. 2004); see also Anderson v. Coors Brewing Co., 181 F.3d 1171, 1180 (10th Cir. 1999).

Metal Ware and Newco have argued that the Tabors have not provided facts sufficient to allow a rationale trier of fact to determine that the lack of a warning was the cause of the Tabors' fire.  In deciding these motions for summary judgment, the court looks specifically to the facts alleged by the Tabors and whether such facts, if proven, would lead a reasonable jury to conclude that Metal Ware's failure to warn any of the above-mentioned parties caused the fire.  The Tabors, through their memoranda and at hearing, have asserted that it was Metal Ware's failure to warn ShopKo, the CPSC, or the Tabors directly, that caused the fire.

### Duty to Shopko

The Tabors argue that Metal Ware knew that ShopKo possessed a large number of FD-50 food dehydrators, and that because of this knowledge, Metal Ware had a duty to warn

ShopKo. Without deciding whether such a duty existed, the court examines the issue of causation under the assumption that such a duty did exist.

The court has closely examined the record for any evidence of what ShopKo would have done if it had received a warning regarding the FD-50 directly from Metal Ware. Of particular importance is the deposition testimony of Shelley Schroeder, ShopKo's director of Vendor Compliance. Ms. Schroeder, a long-time employee of ShopKo, receives all recall notices from the CPSC and oversees recall procedures. Ms. Schroeder is also responsible for handling safety issues brought to ShopKo's attention by vendors outside the recall context. She testified that over the past seven years she has dealt with approximately one hundred recalls and approximately twenty warnings outside the recall context. Ms. Schroeder is the only ShopKo employee designated by Plaintiffs to testify at trial.

Ms. Schroeder testified extensively regarding ShopKo's recall procedures. Ms. Schroeder testified that upon receipt of a notice of recall from the CPSC: "Stores are instructed to post two signs. The first one being at the point of sale, and the second one being at the service desk." (Nov. 16, 2004 Deposition of Shelley Schroeder, attached as Ex. A to Def. Mem Supp. Third Mot. Summ. J. ("Schroeder Depo.") at 22). She also testified that a notice is placed in a book at the customer service desk in each store. The notices are maintained as long as required by the CPSC. The current case, however, does not involve a recall.

The Tabors assert that Metal Ware should have provided notice directly to ShopKo at the time it became aware of the danger presented by the FD-50. On this issue, Ms. Schroeder could not say exactly what would have happened if ShopKo had received a warning. When asked what ShopKo would have done with a warning from Metal Ware, the answer from Ms. Schroeder throughout her deposition was that she did not know. ShopKo does not have a separate

procedure from that applicable to recalls: "It's pretty much all the same procedure." Id. at 21.

Ms. Schroeder testified that when a vendor contacts her regarding a product safety issue she first asks him if he has contacted the CPSC and, if not, when he will. If the vendor has contacted the CPSC, ShopKo would await word on the proper course of action. Ms. Schroeder testified: "I will allow the vendor a certain amount of time to contact the CPSC, otherwise I will contact the CPSC [.]" (Id. at 37). Ms. Schroeder could not recall an instance where warnings were posted without a recall issued by the CPSC.

Ms. Schroeder also testified that in a situation like this, if she had received a notice from Metal Ware, she would have "met with corporate counsel to discuss the plan of action based on the information received." (Id. at 44). Ms. Schroeder testified that, generally, upon notice of a product safety issue she and corporate counsel: "would determine the severity of the quality issue . . . if there was injury or death, or if it was a severe quality issue, we would determine . . . whether or not the product should be pulled from our shelves or not before the CPSC issued a recall." (Id. at 49-50). She also testified that if they had received a warning from Metal Ware regarding the fire danger presented by the FD-50, that they would have pulled them from the shelves. Ms. Schroeder did not state that warnings would be posted. The only context in which she noted that warnings would be posted is upon instruction by the CPSC.

The effect of Ms. Schroeder's testimony, taken in a light most favorable to Plaintiffs, is the inference that if Metal Ware had contacted ShopKo, Shopko would have told Metal Ware to contact the CPSC and pulled the FD-50 from the shelves. Metal Ware would then have contacted the CPSC, which would have then initiated a second recall and notified ShopKo that it should post notices. ShopKo would then have posted notices which would have been seen and heeded by the Tabors. Pulling the FD-50 from the shelves would not have been sufficient to

alert the Tabors to the potential fire danger and the inferences required to find causation necessitate a great deal of speculation and conjecture without facts sufficient to create a genuine issue of material fact.

### Duty to CPSC

The Tabors argue that Metal Ware had a continuing duty to make the CPSC aware of any safety issues pursuant to the 1995 recall of the FD-50. Plaintiffs assert that if Metal Ware had made the CPSC aware of the 1997 fire, the CPSC would have then prescribed a plan of action which would have entailed notification to all end-users through the various retailers of the FD-50. For this proposition, Plaintiffs rely on the communications between American Harvest and the CPSC at the time of the 1995 recall which required ongoing reports of adverse events linked to the product.

The Tabors assert that informing the CPSC would have resulted in either the CPSC or Metal Ware contacting ShopKo, which, following procedures, would have posted notices in its stores advising its customers of a renewed or second recall of the product. The Tabors contend that they would then have become aware of the notice and ceased using their FD-50 thereby preventing the fire.

The Tabors have not provided the testimony of any person at the CPSC to indicate what would have occurred if Metal Ware had informed it of the 1997 fire. Relying on the 1995 recall and the continuing reporting obligation, the Tabors ask the court to speculate as to what the CPSC would have done, how Metal Ware would have responded, what ShopKo would have done and how they would have reacted. This chain of logic is simply too speculative.

### Duty to the Tabors

The Tabors argue that when they purchased the FD-50 they sent a registration card to

American Harvest and that they subsequently contacted American Harvest several times. According to the Tabors, Metal Ware knew or should have known they had purchesd an FD-50 and should have warned them directly of the fire danger.

     Linda L. Youngchild, corporate secretary, assistant treasurer, and member of the board of directors for Metal Ware, testified in deposition. Ms. Youngchild testified that American Harvest maintained a consumer database and that this database was acquired by Newco and Metal Ware when they acquired American Harvest. Ms Youngchild testified: "These records were end-use consumers and they were entered into the system after either a phone contact [*sic*]. It might have been through a web contact, but most often they were from warranty or product registration cards that were mailed in." (Nov. 15, 2004 Deposition of Linda Youngchild, attached as Ex. A to Pla. Mem Opp. Mot. Summ. J. ("Youngchild Depo."), at 17. She further testified that these records had been maintained from 1992 through the time of the deposition.

     The Tabors have asserted that they registered their food dehydrator with American Harvest and also contacted Metal Ware directly. The Tabors maintain that they should have been included on the consumer database maintained by American Harvest making a direct warning possible. Ms. Youngchild testified that a computer search of the consumer database did not reveal that Plaintiffs as customers of either American Harvest or Metal Ware. (Id. at 19).

     Ms. Youngchild testified that the Tabors had contacted Metal Ware by telephone several times between December 30, 1998, and February 2, 1999, and that they should have been included on the current customer list, but were not. She could not explain why they were not included. These telephone calls do raise the question of why the Tabors were not included in the customer database at some point after the fire, but they are immaterial as to whether Metal Ware could have warned them prior to the fire which occurred on November 19, 1998.

Plaintiffs argue that, from this evidence, one can infer that the Tabors' names were intentionally removed from the list of customers in anticipation of litigation. There is nothing to support this inference. The facts provided indicate merely that the Tabors were not registered consumers of the FD-50 and could not have been contacted directly. This does not demonstrate that Metal Ware's failure to warn the Tabors directly was the cause of the fire. The inference sought by the Tabors requires speculation without factual support and thus cannot defeat a motion for summary judgment.

## ORDER

Accordingly, Defendants' motion for summary judgment on the issue of causation (Dkt. 148) is GRANTED. Defendants' motion for summary judgment on the issue of punitive damages (Dkt. 150) and Plaintiffs' motion for partial summary judgment (Dkt. 152 & 158) are DENIED as moot.

DATED this 19th day of May, 2005.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge