IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TIMOTHY A. TABOR, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>THE METAL WARE CORPORATION, a Wisconsin Corporation, et al.,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT RE: PUNITIVE DAMAGES**<br><br><br>Case No. 2:99-cv-00503 CW<br><br>Judge Clark Waddoups |

This matter is before the court on Defendant The Metal Ware Corporation's Motion for Summary Judgment Re: Punitive Damages. The court heard oral argument on January 15, 2009, at 1:00 p.m. Theodore E. Kanell and Stewart Harmon appeared on behalf of Timothy A. Tabor and Debra J. Tabor (the "Tabors"). Brian Webber appeared on behalf of The Metal Ware Corporation ("Metal Ware"). Gerry B. Holman appeared on behalf of Farmers Insurance Group.

**FACTUAL BACKGROUND**

The Tabors filed suit against Metal Ware alleging that an American Harvest food hydrator overheated and destroyed their house by fire. In August 1995, the United States Consumer Product Safety Commission ("CPSC") investigated certain American Harvest food hydrators due to the potential fire hazard they posed, which resulted in a recall.[1] The CPSC closed its investigation in

---

[1] Docket No. 157, Ex. G.

February 1996, but American Harvest had a continuing obligation to report any new incidents.[2]

The Tabors purchased their food hydrator in the spring of 2006.[3] In April 1997, Metal Ware acquired American Harvest's assets. Metal Ware knew about the safety recall at the time of the asset purchase.[4] Additionally, files received from American Harvest contained the correspondence about American Harvest's continuing obligation to report any new incident.[5] Besides receiving the CPSC correspondence, Metal Ware obtained American Harvest's customer database and boxes of documents regarding sale transactions information.[6]

In December 1997, Metal Ware received a report that a food hydrator caused a fire in a home in Oklahoma.[7] The food hydrator had the same model number as those involved in the recall.[8] After Metal Ware learned about the Oklahoma fire, it is undisputed that it did not report the incident to CPSC. It is also undisputed that Metal Ware did not inform retailers, issue any press releases, or notify any of its customers about the incident.

---

[2] *Id.*, Ex. Q, at WI 0150.

[3] Order, at 2 (Sept. 8, 2003) (Docket No. 98).

[4] Docket No. 157, Ex. I, at 40:15–21, 86:15–21.

[5] *See id.*, Ex. C, at 90:7–16, Ex. R.

[6] *Id.*, Ex C., at 27; Order, at 4 (Sept. 9, 2008) (Docket No. 212). The Tabors sent in a registration form for their food hydrator and received a small gift in return from American Harvest. The Tabors therefore contend their contact information should have been in the files or database that American Harvest transferred to Metal Ware. Metal Ware contends it had no information about the Tabors, but admits it did not review all of the customer files until after this lawsuit was commenced.

[7] *Id.*, Ex. S.

[8] *Compare id.*, *with* Ex. G.

For purposes of summary judgment, it is undisputed that in November 1998, the Tabors' food hydrator caused a fire that destroyed their home. The Tabors contend Metal Ware had a duty to warn the public after it received information about the Oklahoma fire about a year earlier. The issue here is whether the failure to warn under these circumstances constitutes a willful and malicious act or shows a reckless indifference to the rights of others sufficient to support a claim for punitive damages.

## DISCUSSION

**I.    SUMMARY JUDGMENT STANDARD**

"Summary judgment is appropriate if the moving party demonstrates that 'there is no genuine issue as to any material fact' and that it is 'entitled to judgment as a matter of law.'"[9] Summary judgment must be entered "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"[10]

In the Tenth Circuit, however, "the moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment."[11] "Even when, as here, the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is

---

[9] *United States ex rel. Bublaw v. Orenduff*, 548 F.3d 931, 946 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).

[10] *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[11] *Pelt v. Utah*, 539 F.3d 1271, 1280 (2008) (quotations, citations, and alteration omitted).

appropriate as a matter of law."[12]  A moving party may meet this burden "by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[13]

When determining whether a nonmovant has enough evidence to carry its burden at trial, the court does not weigh the evidence or determine credibility.  Instead, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in the [nonmovant's] favor."[14]  Although a court views the evidence in a light most favorable to the nonmovant, it nevertheless does so "through the prism of the substantive evidentiary burden."[15]

Here, the burden of proof is clear and convincing evidence.  To avoid summary judgment, the Tabors must show that they have sufficient evidence to carry their burden at trial.  The question therefore becomes "whether the evidence presented is such that a jury applying" the clear and convincing evidence "standard could reasonably find for either the plaintiff or the defendant."[16]  If a reasonable jury could not return a verdict awarding punitive damages to the Tabors based on the evidence presented, then summary judgment is appropriate.[17]  In this case, while the court has reviewed the evidence to determine if it could support a jury finding, the court makes no findings of fact as part of its decision.

---

[12] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002) (citation omitted).

[13] *Id.* (citation omitted).

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[15] *Id.* at 254.

[16] *Id.* at 255.

[17] *See id.* at 252.

## II. PUNITIVE DAMAGES

The court has determined already in this case that a duty to warn extends to a successor company.[18] Metal Ware is a successor company. Consequently, a jury must now determine whether Metal Ware is liable for failing to warn consumers about the fire hazard. Whether punitive damages should be awarded is a separate issue.

### A. Standard for Awarding Punitive Damages

Utah law applies in this case.[19] To impose punitive damages under Utah law, a fact-finder must find, by clear and convincing evidence, that the "acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others."[20]

The Utah Supreme Court has set forth three elements to help determine whether a person acted maliciously or with reckless indifference. Specifically, a person

> must either know or should know [1] that such conduct would, in a high degree of probability, result in substantial harm to another, and [2] the conduct must be highly unreasonable conduct, or an extreme departure from ordinary care, [3] in a situation where a high degree of danger is apparent.[21]

---

[18] Order, at 5 (Apr. 26, 2004) (Docket. No. 121).

[19] Utah substantive law applies here because this action is based on diversity. When a case arises based on diversity, a court must "ascertain and apply the state law." *Wade v. Emcasco Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (quotations and citation omitted).

[20] Utah Code Ann. § 78-18-1 (2008).

[21] *Gleave v. Denver & Rio Grande Western R.R. Co.*, 749 P.2d 660, 670–71 (Utah Ct. App. 1988) (quoting *Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179, 1186–87 (Utah 1983) (internal quotations and citations omitted)).

Tabor must establish these elements by clear and convincing evidence to prove that Metal Ware acted maliciously or with reckless indifference toward, and a disregard of, the rights of others.

**B.     Metal Ware's Actions**

1.     High degree of probability

To meet the first element, Tabor must present sufficient evidence to allow the jury to find that Metal Ware knew or should have known, with a high degree of probability, that its failure to warn would result in substantial harm to another. Tabor presented evidence that Metal Ware knew about the prior safety recall and also knew that a corrective action plan had been implemented to repair or replace the defective food hydrators. The evidence would support a finding that the CPSC ended its investigation after American Harvest had made sufficient progress under the corrective action plan.

The evidence also would support a finding that approximately two years later, Metal Ware learned about a fire in Oklahoma that involved a food hydrator with the same model number as the hydrators subject to the safety recall. No evidence, however, has been provided regarding the cause of that fire. There would be, therefore, no basis for a jury to find whether the fire occurred due to a defective part or through misuse. Based on the evidence presented, a jury could not conclude by clear and convincing evidence that Metal Ware knew or should have known, with a high degree of probability, that its failure to warn consumers about the Oklahoma fire would result in substantial harm to another.

       2.      <u>Highly unreasonable conduct, or an extreme departure from ordinary care</u>

"Notice or knowledge of a dangerous condition and failure to act absent more, do not support a claim for punitive damages."[22] Rather, by clear and convincing evidence, the plaintiff must show that a defendant's failure to warn was highly unreasonable or an extreme departure from ordinary care. Here, the Tabors have not presented evidence from which a jury could find when or under what circumstances a warning ordinarily is issued in Metal Ware's industry. Nor have they provided evidence that would allow a jury to find that Metal Ware's failure to warn constituted an extreme departure from such care. Absent this information, a jury could not conclude by clear and convincing evidence that this element had been met.

       3.      <u>A high degree of danger is apparent</u>

The third element requires clear and convincing evidence that Metal Ware knew or should have known that a high degree of danger was apparent in the given situation. The evidence would support a finding that Metal Ware knew about the prior safety recalls for the food hydrators due to a fire hazard. The evidence also would support a finding that Metal Ware knew that a food hydrator had been involved in a fire in Oklahoma. Fire presents a high degree of danger. Thus, a reasonable jury could conclude, on the evidence presented, that Metal Ware knew or should have known about the high degree of danger in this situation. Nevertheless, because the first two elements for punitive damages are not met, Metal Ware is entitled to summary judgment on this issue.

---

[22] *Orr v. Brigham Young Univ.*, 960 F. Supp. 1522, 1531 (D. Utah 1994).

Accordingly, the court hereby GRANTS Metal Ware's Motion for Summary Judgment Re: Punitive Damages.[23]

DATED this 6th day of February, 2009.

BY THE COURT:

Clark Waddoups
United States District Judge

---

[23] Docket No. 150.